**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Javier Sanchez BARRAGAN,**
**Defendant–Appellant.**

No. 00–30335.

United States Court of Appeals,
Ninth Circuit.

Submitted July 13, 2001[1]

Filed Aug. 29, 2001

---

1. The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2)(C).

---

Edmund F. Sheehy, Jr., Cannon and Sheehy, Helena, Montana, for the defendant-appellant.

Joshua S. Van de Wetering, Assistant United States Attorney, United States Attorney's Office, Missoula, Montana, for the plaintiff-appellee.

Before: ALARCON, FERNANDEZ, and TASHIMA, Circuit Judges.

ALARCON, Circuit Judge:

Defendant-appellant Javier Sanchez Barragan appeals from the judgment of conviction for conspiracy to distribute narcotics and distribution of narcotics, in violation of 21 U.S.C. §§ 841(a)(1) & 846, and for money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). Barragan contends that the evidence offered at trial is insufficient to support his convictions for conspiracy and money laundering. He also contends that his conviction for three counts of distribution of narcotics must be vacated because the evidence offered at trial was at variance with the indictment in light of the fact that the Government failed to demonstrate that his co-defendants distributed drugs. Finally, he contends that his term of supervised release violates the rule of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because the district court did not submit the issue of the quantity of drugs to the jury. We affirm because we conclude that the evidence was sufficient to support the judgment and was not at variance from the allegations set forth in the indictment. We also hold that Barragan is not entitled to relief under *Apprendi* because his term of supervised release did not exceed the statutory maximum authorized by 21 U.S.C. § 841(b)(1)(C).

**I**

Barragan and his co-defendants Terry LaRoque, Victor Abundiz, Ruben Godinez, Ramon Chipres, Julie Rivas, and Scott Miner were jointly named in a 64–count indictment charging them with violations of 21 U.S.C. §§ 846 & 841(a)(1), and 18 U.S.C. § 1956. Barragan was charged with conspiracy to distribute narcotics (Count 1), conspiracy to distribute narcotics within 1000 feet of a school (Count 2), distribution of methamphetamine, cocaine, and marijuana (Counts 3–5, respectively), and money laundering (Counts 6–7, 12–23).

Co-defendants LaRoque, Abundiz, and Godinez pleaded guilty prior to trial. The Government dismissed all charges against Miner. Barragan, Chipres, and Rivas proceeded to trial.

The Government's principal witnesses at trial were LaRoque and William McClellan. Each of them testified that they had bought drugs from Barragan and his "partners" on numerous occasions in Missoula, Montana. LaRoque testified that he began purchasing cocaine and marijuana from Barragan on a regular basis in the summer of 1997. He then sold those drugs to McClellan. LaRoque testified that "a couple" of these transactions took place in Barragan's motel room. Eight or nine months after commencing this relationship, LaRoque introduced Barragan to McClellan.

McClellan testified that after his initial meeting with Barragan, McClellan began purchasing cocaine, methamphetamine, and marijuana directly from Barragan. Barragan supplied McClellan with large quantities of drugs, and McClellan paid Barragan after selling the drugs to others. McClellan testified that on one occasion he purchased drugs in Barragan's motel room. He also testified that on two occasions he wired money to Barragan to pay for drugs supplied by him. The evidence demonstrated that Barragan lived in Yakima, Washington, and that he stayed in various motels while visiting Missoula. The Government offered evidence that would support an inference that Barragan had no reason for being in Missoula other than to sell drugs.

At the conclusion of the two-day trial, Barragan and his co-defendants agreed that the district court should not submit the issue of the quantity of drugs involved in the offense to the jury. The jury acquitted Chipres of all charges, and convicted Rivas on Count 1. Barragan failed to move for judgment of acquittal at the close of evidence. The jury convicted him on Counts 1, 3–7, 12–16, and 21–23. The district court sentenced Barragan to 168 months of imprisonment on Counts 1, 3–4, 6–7, 12–16, and 21–23, and 60 months of imprisonment to be served concurrently on Count 5, to be followed by 5 years of supervised release.

## II

■ Barragan contends that the evidence at trial was insufficient to sustain his conviction for conspiracy because it failed to show an agreement between him and others. Because Barragan failed to move for judgment of acquittal at the close of all the evidence, we may review this claim "only to prevent a manifest miscarriage of justice, or for plain error." *United States v. Alvarez–Valenzuela*, 231 F.3d 1198, 1200–01 (9th Cir.2000). In reviewing the sufficiency of the evidence, we must determine whether "viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Symington*, 195 F.3d 1080, 1088–89 (9th Cir.1999).

■ "To establish a drug conspiracy, the government must prove: 1) an agreement to accomplish an illegal objective; and 2) the intent to commit the underlying offense." *United States v. Iriarte–Ortega*, 113 F.3d 1022, 1024 (9th Cir.1997), *amended by* 127 F.3d 1200 (9th Cir.1997). LaRoque testified at trial that he bought cocaine and marijuana from Barragan and his "partners," whom he identified as Victor Abundiz and Emilio Godinez. McClellan testified that Barragan sold drugs in conjunction with Ramon Chipres. McClellan testified that Chipres drove Barragan around, and that McClellan twice "met [Chipres] and gave him cash and received drugs." McClellan also testified that Barragan supplied him with large amounts of methamphetamine and cocaine, which he would then sell to others and pay Barragan with the proceeds. This and other evidence in the record is sufficient to sus-

tain Barragan's conviction for conspiracy to distribute narcotics. *See Iriarte–Ortega,* 113 F.3d at 1024 (noting that "most conspiracy convictions are based on circumstantial evidence, and we allow juries to draw inferences as to the existence of an agreement from the defendants' conduct.").

### III

Barragan also contends that the evidence offered at trial is insufficient to sustain his convictions for money laundering because the Government failed to prove "that there was an intent to promote the carrying on of ... distributing dangerous drugs." As noted above, we review this claim for plain error because Barragan failed to move for judgment of acquittal. *Alvarez–Valenzuela,* 231 F.3d at 1200–01.

Counts 6–7, 12–16, and 21–23 of the indictment charge Barragan with violating 18 U.S.C. § 1956(a)(1)(A)(i), which provides that "[w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity ... with the intent to promote the carrying on of specified unlawful activity ... [is guilty of a felony.]"

Counts 6 and 7 specifically charge Barragan with "initiating or concluding" the wiring of drug proceeds via Western Union on November 7, 1998 and January 9, 1999 "with the intent to promote the carrying on of the unlawful distribution of controlled substances...." Barragan concedes that the Government offered sufficient evidence to support the reasonable inference that the monies wired to him by McClellan were proceeds of the drug distribution enterprise. Barragan contends, however, that the evidence is insufficient to prove an intent to promote the carrying on of the unlawful distribution of drugs,

relying on *United States v. Torres,* 53 F.3d 1129 (10th Cir.1995). In *Torres,* a purchaser wired the defendant $2,000 to pay for a sale of methamphetamine. *Id.* at 1138. The defendant then used the $2,000 to pay for a new car. The Government offered no evidence that the car was used to promote further unlawful activity. *Id.* The Tenth Circuit reversed the defendant's conviction for money laundering, concluding that "there is simply no evidence that that transaction-buying a car-was undertaken with an intent to promote further unlawful activity as required by § 1956(a)(1)(A)(i)." *Id.* at 1139.

■ Barragan's reliance on *Torres* is misplaced because he erroneously assumes that the Government was required to prove that he reinvested the illicit proceeds in the drug enterprise. We have explicitly rejected the view "that intent 'to promote the carrying on' of the illegal activity can *only* be found when the proceeds are 'plowed back' into the activity." *United States v. Manarite,* 44 F.3d 1407, 1415–16 (9th Cir.1995) (construing "nearly identical" intent requirements of 18 U.S.C. § 1956(a)(3)). Rather, we have consistently held that a jury may infer intent to promote the illegal activity from evidence that illicit proceeds have been transferred. *See id.* at 1416 (holding that evidence that defendants distributed proceeds from illegal chip-cashing scheme was sufficient to support conviction for money laundering because the "scheme could not benefit its participants unless the chips were cashed."); *United States v. Baker,* 63 F.3d 1478, 1494 (9th Cir.1995) (affirming conviction under § 1956(a)(1)(A)(i) based on evidence that defendant made payments to suppliers of contraband cigarettes, reasoning that "[t]he government presented abundant evidence of payments [defendant] made ... for the purchase of contraband cigarettes. [Defendant] could not

have continued the illegal trafficking without paying his ... suppliers."); *United States v. Montoya*, 945 F.2d 1068, 1076 (9th Cir.1991), *rev'd on other grounds*, *McCormick v. United States*, 500 U.S. 257, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991) (holding that depositing a check in a bank account satisfied the requirements of § 1956(a)(1)(A)(i) because the defendant could not make use of the funds without depositing the check). Moreover, other courts have also concluded that a jury may infer the requisite intent from proof of an illegal transfer. *See, e.g., United States v. Paramo*, 998 F.2d 1212, 1218 (3d Cir.1993) (affirming convictions under § 1956(a)(1)(A)(i) based on evidence that defendant cashed embezzled checks); *United States v. Skinner*, 946 F.2d 176, 177–78 (2d Cir.1991) (affirming convictions under § 1956(a)(1)(A)(i) where one defendant sent cocaine from Alaska to Vermont, a second defendant sold the cocaine in Vermont and then used the proceeds to purchase money orders which she sent to the defendant in Alaska).

■ Turning to the facts of this case, we conclude that the Government offered sufficient evidence to sustain Barragan's convictions on Counts 6 and 7. There is no dispute that the Government presented sufficient evidence to support the conclusion that the wire transfers represented proceeds from illicit drug transactions. McClellan testified that the proceeds were wired in order to pay for the drugs supplied to him by Barragan. Given that Barragan lived in Yakima, Washington, and that McClellan lived in Missoula, Montana, a rational jury could conclude that Barragan used the wire transfers to facilitate payment for the drugs that McClellan had sold on consignment. This in turn supports the conclusion that the wire transfers were effected with the purpose of promoting Barragan's drug distribution enterprise. Under the standard articulated in *Manarite* and *Montoya*, the Govern-

ment did not bear the additional burden of proving that Barragan actually reinvested the proceeds in the illicit enterprise. Barragan has failed to demonstrate plain error on this record.

■ Counts 12–16 and 21–23 charge Barragan with "willfully and unlawfully conduct[ing] financial transactions [using drug proceeds] by renting hotel rooms with the intent to promote the carrying on of the unlawful distribution of controlled substances.... " Barragan concedes that the Government offered sufficient evidence to demonstrate that the motel rooms in Missoula, Montana were rented with drug proceeds. Barragan contends, however, that the Government failed to prove that he acted with the intent of promoting the unlawful distribution of drugs.

LaRoque testified that Barragan sold drugs "a couple of times" from a room in a motel called the "Inn on Broadway." McClellan testified that he met Barragan and Chipres at the Red Lion Inn and "paid a bill and received drugs." The Government presented additional evidence that Barragan rented rooms at the Inn on Broadway, Red Lion Inn, and Super 8 Motel in Missoula, Montana. The Government also introduced evidence that supports an inference that Barragan had no reason for being in Missoula other than to sell drugs. This evidence is sufficient to support a reasonable inference that Barragan rented the motel rooms in order to further his drug distribution enterprise. *See, e.g., Manarite*, 44 F.3d at 1416; *Montoya*, 945 F.2d at 1076. Barragan has failed to demonstrate that his convictions on Counts 12–16 and 21–23 are the result of plain error.

■ Barragan also contends that the evidence is insufficient as to Counts 14 and 16 because the evidence indicates that only one transaction occurred at the Red Lion Inn, and "it can not clearly be concluded" that the transaction occurred on either

November 9, 1998 or December 11, 1998, the dates specified in the indictment. McClellan testified that Barragan sold him methamphetamine and marijuana at the Red Lion Inn in the fall of 1998. In light of evidence that Barragan and his partners stayed at the Red Lion Inn and that Barragan only came to Missoula in order to sell drugs, we conclude that the jury could reasonably have inferred that Barragan stayed at the Red Lion Inn on both occasions in order to further his drug distribution enterprise.

 Similarly, Barragan contends that the evidence is insufficient as to Counts 12 and 13 because the Government failed to prove a specific date on which these transactions occurred. We reject this claim because the date of the transaction is not an element of the offense under § 1956(a)(1)(A)(i), and Barragan has not demonstrated that the failure to prove a specific date affected his substantial rights.

### IV

 Barragan also contends that the evidence offered at trial is at variance with Counts 3–5 of the indictment because "[t]here was no evidence that Victor Abundiz, Ruben Godinez and Scott Miner were involved in any distribution of dangerous drugs, as alleged in these three (3) counts." This court has held that "[a] variance warrants reversal only if it 'affects the substantial rights of the parties.'" *United States v. Duran*, 189 F.3d 1071, 1081 (9th Cir.1999) (citation omitted). Because Barragan failed to raise this issue before the district court, we review it for plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Dipentino*, 242 F.3d 1090, 1094 (9th Cir.2001) (reviewing forfeited claim of constructive amendment to indictment for plain error).

 Counts 3–5 charge Barragan and several co-defendants with distribution of methamphetamine, cocaine, and marijuana.

Barragan concedes that the Government offered sufficient evidence to sustain his conviction for distribution of narcotics. Barragan argues, however, that the Government's failure to prove that his co-defendants also distributed narcotics constitutes an impermissible variance from the allegations in the indictment. We reject this contention. The Government was not required to introduce sufficient evidence to persuade the jury of the guilt of Barragan's co-defendants in order to prove that Barragan had distributed narcotics. Moreover, the record shows that each of them pled guilty before Barragan's trial.

### V

 Barragan also contends that the district court plainly erred under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), by sentencing him to five years of supervised release because the jury made no finding regarding drug quantity. Barragan points out that a conviction for an unknown quantity of cocaine or methamphetamine falls under 21 U.S.C. § 841(b)(1)(C), making it a "Class C" felony under 18 U.S.C. § 3559(a)(3). As such, Barragan maintains, 18 U.S.C. § 3583(b)(2) permits a maximum of three years of supervised release for this offense. We reject this contention. We have previously held that the supervised release terms authorized by 21 U.S.C. § 841 trump the maximums set forth in § 3583(b)(2). *United States v. Garcia*, 112 F.3d 395, 398 (9th Cir.1997). Though U.S.S.G. § 5D1.2(a) has been amended since our decision in *Garcia*, we conclude that the amendment does not restrict the maximum term of supervised release that may be imposed under § 841(b)(1)(C). *See United States v. Pratt*, 239 F.3d 640, 646–48 (4th Cir.2001) (holding that "where a statute's mandatory minimum term of supervised release is the same as, or exceeds, § 3583's maximum terms, § 3583's maximum terms do not

apply."); *United States v. Heckard,* 238 F.3d 1222, 1237 (10th Cir.2001) (holding that " § 841(b)(1)(C) is not restricted by U.S.S.G. § 5D1.2(a) or § 3583(b)(2) from establishing terms of supervised release greater than three years."); *United States v. Aguayo–Delgado,* 220 F.3d 926, 933 (8th Cir.2000) (same). *But see United States v. Meshack,* 225 F.3d 556, 578 (5th Cir.2000) (holding that § 3583 limits a sentence of supervised release imposed under § 841(b)(1)(C) to a term of three years), *cert. denied, Parker v. United States,* 531 U.S. 1100, 121 S.Ct. 834, 148 L.Ed.2d 716 (2001), *amended by United States v. Meshack,* 244 F.3d 367 (5th Cir.2001). Since Barragan's term of supervised release is within that permitted under § 841(b)(1)(C), he is not entitled to relief under *Apprendi.*

**AFFIRMED.**