FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MICHAEL RAY RAMIREZ,
*Defendant-Appellant*.

No. 11-50346

D.C. No.
3:09-cr-04023-JM-2

OPINION

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, Senior District Judge, Presiding

Argued and Submitted
January 9, 2013—Pasadena, California

Filed April 29, 2013

Before: Alex Kozinski, Chief Judge, M. Margaret
McKeown, and Milan D. Smith, Jr., Circuit Judges.

Opinion by Chief Judge Kozinski

## SUMMARY[*]

### Criminal Law

The panel vacated a conspiracy conviction, affirmed convictions for distribution and possession with intent to distribute methamphetamine, and remanded in a case in which the district court instructed the jury not to speculate as to why the government did not call as a witness a go-between in the defendant's drug sales to an undercover agent.

The panel held that the district court did not abuse its discretion by failing to deliver a "missing witness" instruction informing the jury that it could conclude that the government did not call the go-between as a witness because his testimony would have hurt the government case.

The panel held that the district court did err by sua sponte instructing the jury not to "speculate" about the reasons for the go-between's absence as a witness. The panel wrote that by labeling the inference about the reasons for the go-between's absence as "speculation" and instructing the jury not to credit it, the judge put off-limits a legitimate inference that could have been helpful to the defense. The panel held that the error was harmless with regards to the charges of distribution and possession with intent to distribute.

The panel held that there was insufficient evidence to support the conspiracy charge because there was no evidence

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of an agreement between the defendant and someone else to distribute meth.

The panel rejected the defendant's contention under *United States v. Buckland*, 289 F.3d 558 (9th Cir. 2002), that the district court shouldn't have imposed a sentencing enhancement under 21 U.S.C. § 841(b) because the indictment didn't allege, and the jury didn't find beyond a reasonable doubt, that he had a prior drug felony. The panel wrote that nothing in *Buckland*, which dealt only with the "material fact[s]" of drug type and quantity, suggests that its construction of section 841(b) applies to the fact of a prior conviction.

---

## COUNSEL

Devin Burstein (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Fred Sheppard (argued), Assistant United States Attorney, Laura E. Duffy, United States Attorney and Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section, Criminal Division, Office of the United States Attorney for the Southern District of California, San Diego, California, for Plaintiff-Appellee.

---

**OPINION**

KOZINSKI, Chief Judge:

When may a judge instruct jurors not to speculate?

## I.  BACKGROUND

Michael Ramirez and his associate Andres Bejaran were the unwitting stars of a government sting.  Four times in one month, an undercover agent purchased escalating amounts of meth from Ramirez, using Bejaran as a go-between.  The buys followed a pattern:  Bejaran directed the undercover to drive him to an inconspicuous location, took the money from the undercover, walked the cash over to Ramirez (who was waiting either in a nearby car or in a restaurant), exchanged it for meth and returned to the undercover.  Ramirez and Bejaran were arrested during the fourth transaction.

Bejaran copped a plea and agreed to testify for the government, but the United States chose to present his statements to the jury using the undercover's testimony and audio recordings.  Ultimately, Bejaran did not take the stand, although the defense established that he had been arrested and pled guilty.  That Bejaran had agreed to testify for the government was never revealed to the jury, although the parties discussed the issue both with District Judge Moskowitz, who handled pre-trial motions, and with District Judge Miller, who presided at trial.

Before closing argument, Ramirez asked the judge to deliver a "missing witness" instruction informing the jury that it could "conclude that the government did not call Bejeran

[sic] as a witness because his testimony would have hurt the government case." The district court refused.

Ramirez's lawyer brought up Bejaran's absence several times during summation. The government's lack of evidence against him, Ramirez told the jury, was compounded by the fact that Bejaran hadn't testified—Bejaran "could have filled in the holes for you, . . . could have told you what was going on." After Ramirez's closing statement, the judge addressed the jury as follows:

> [W]ith respect to Mr. Bejaran, you may consider that Bejaran was not called as a witness by the government. However, there is no evidence before you as to why Bejaran was not called, and you should not speculate as to any reason why Bejaran was not called.

The jury convicted Ramirez of distribution, possession with intent to distribute and conspiracy to distribute meth.

## II. DISCUSSION

### A. The Missing Witness Instruction

A missing witness instruction is appropriate if two requirements are met: (1) "[t]he party seeking the instruction must show that the witness is peculiarly within the power of the other party" and (2) "under the circumstances, an inference of unfavorable testimony [against the non-moving party] from an absent witness is a natural and reasonable one." *United States* v. *Leal-Del Carmen*, 697 F.3d 964, 974–75 (9th Cir. 2012) (internal quotation marks omitted).

The district judge here didn't abuse his discretion by failing to give this instruction.  *See United States* v. *Bautista*, 509 F.2d 675, 678 (9th Cir. 1975); *see also United States* v. *Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

While the judge didn't articulate the two-part test described above, his comments make it clear that he identified and applied the correct rule.  The judge did say that he wasn't "inclined" to give the instruction unless the defense could identify Ninth Circuit caselaw requiring him to do so, but this merely indicated the judge would be willing to reconsider if shown authority that he lacked discretion to refuse.  There's no error in keeping an open mind.

Nor can we say that the judge's decision was illogical. *See Hinkson*, 585 F.3d at 1262.  Even if Bejaran was peculiarly within the government's control, it's still not a "natural and reasonable" inference that Bejaran would have testified against the government.  Ramirez argues that, because Bejaran was "the single best witness" against him, the government would have called Bejaran if it thought he would testify favorably.  But a party may choose not to present an available favorable witness for a variety of reasons.  The government here, in fact, seems to have had a good reason for not calling Bejaran:  Between the time he agreed to testify and the time of the trial, he was jumped by two inmates and hospitalized with permanent brain damage. The judge could reasonably have concluded that the government chose not to call Bejaran because it feared that his effectiveness as a witness was compromised by the attack.

## B.  The Sua Sponte Instruction

But the district judge didn't merely refuse to give an instruction favorable to the defense.  Without being asked by the government, he effectively instructed the jury not to fall for defense counsel's argument that the government didn't put Bejaran on the stand because he would have testified in a manner favorable to the defense.

The government urges us to review this instruction for plain error because Ramirez failed to object.  *See* Fed. R. Crim. P. 30(d).  But Ramirez's lawyer had no opportunity to object beforehand because the district judge did not consult with counsel about what he was going to say prior to giving the instruction.  The judge did mention more than once that he was contemplating an instruction of some sort on the missing witness issue, but he did not commit to giving such an instruction or disclose its content.  Defense counsel thus had nothing to object to.  The question, then, is whether Ramirez's attorney should have objected after the judge gave the instruction and risked calling the jury's special attention to it.

Under these circumstances, we conclude defense counsel wasn't required to object.  By his earlier request for a missing witness instruction, Ramirez "made his point clear" that Bejaran's absence should be counted against the government. *See United States* v. *Castagana*, 604 F.3d 1160, 1163 n.2 (9th Cir. 2010).  "There was no doubt of his continuing position" that Bejaran's absence should be noted and no need for Ramirez to make "a futile formal objection" to the sua sponte instruction.  *Id.* (internal quotation marks omitted).  We

therefore review de novo.  *See United States* v. *Verduzco*, 373 F.3d 1022, 1030 n.3 (9th Cir. 2004).

We have held that "[w]hen the government can call a key percipient witness, but relies instead on out-of-court statements," it's "permissible" for the jury to infer that the witness's testimony would have been "unfavorable to the prosecution." *United States* v. *Kojayan*, 8 F.3d 1315, 1317 (9th Cir. 1993) (internal quotation marks omitted); *cf. United States* v. *Stever*, 603 F.3d 747, 754 (9th Cir. 2010).  Juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial."  *See Coleman* v. *Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam).  "It is the jury, not the court, which . . . weighs the contradictory evidence and inferences, . . . and draws the ultimate conclusion as to the facts.  The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable." *Tennant* v. *Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 35 (1944).

The judge here instructed the jury not to "speculate" about the reasons for Bejaran's absence.  The term "speculate" has a vaguely pejorative cast; when judges use it, they generally refer to inferences that are irrational or impermissible.  For instance, we occasionally reverse Immigration Judges' findings by saying that they are based on "speculation and conjecture." *See, e.g.*, *Joseph* v. *Holder*, 600 F.3d 1235, 1247 (9th Cir. 2010); *Chawla* v. *Holder*, 599 F.3d 998, 1009 (9th Cir. 2010).  And, indeed, it would have been perfectly proper for the district judge to warn the jury not to draw *impermissible* inferences by telling the jurors not to speculate, for example, as to why the judge had

stricken certain testimony or what a witness might have said if he'd been allowed to answer an objectionable question.

But jurors are entitled—nay, required—to draw inferences on matters that are not off-limits to them. Without inferences, the government could seldom prove up its case, as it must rely on the common sense and life experience of the jurors to fill in matters that are not provable by direct evidence, such as intent, premeditation or the existence of a conspiracy.

As explained above, it would have been entirely reasonable and permissible for the jury to infer that Bejaran was within the control of the government, and that the government would have put him on the stand if it believed his testimony would be helpful to it. From that, it would have been possible for the jurors to infer that his testimony would have helped the defendant. This was a relatively weak inference, but decidedly helpful to the defense, as it would have cast doubt on whether the handful of Bejaran's hearsay statements introduced at trial told the whole story.

The district court may have known or suspected that this was the wrong inference, and perhaps decided to "help" the jurors by keeping them from making a mistake. But it is the government's job, not the court's, to make sure the jury doesn't draw incorrect inferences. Doing so here would have complicated the prosecution's case somewhat, and perhaps that is why the government chose not to say anything about the reasons for Bejaran's absence. But that was the government's choice to make. It was not the court's function, after both sides had rested, to give an instruction that filled in the evidentiary gap the court believed the government had left

in its case. By labeling the inference about the reasons for Bejaran's absence as "speculation" and instructing the jury not to credit it, the judge put off-limits a legitimate inference that could have been helpful to the defense.

A judge may not preclude the jury from drawing any inferences that it may legitimately draw. The sua sponte instruction, therefore, was error. By instructing the jurors to disregard any uncertainty about why the prosecution didn't call a witness—who might have been the *key* witness—the court improperly inserted itself into the jury room and interfered with the jury's role as a factfinder.

This incident demonstrates why it's a good practice for the court to discuss the language of a proposed instruction with the parties before giving it. Had the court done so here, defense counsel may have pointed out the error and convinced the judge not to deliver the instruction, thus avoiding an issue on appeal.

However, the court's sua sponte instruction didn't rise to the level of constitutional error, which would have required us to reverse Ramirez's convictions unless the error was "harmless beyond a reasonable doubt." *See Leal-Del Carmen*, 697 F.3d at 975. To be sure, the Constitution protects a criminal defendant's right to argue a point that goes to the heart of his defense. *See, e.g.*, *Stever*, 603 F.3d at 755–57; *United States* v. *Kellington*, 217 F.3d 1084, 1099–1101 (9th Cir. 2000). But discussing Bejaran's absence was merely a small part of the defense's broader strategy of casting doubt on the government's evidence wherever and whenever possible.

In the absence of constitutional error, we may reverse Ramirez's conviction only if we "cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error." *United States* v. *Hernandez*, 476 F.3d 791, 801 (9th Cir. 2007) (internal quotation marks omitted). Under this standard, the sua sponte instruction was harmless with regards to the charges of distribution and possession with intent to distribute. Even if the jury had drawn a negative inference about Bejaran's absence, the government presented substantial evidence—including testimony from the undercover and other law enforcement officers—indicating that Ramirez was a drug dealer. There was simply no plausible alternative explanation for Ramirez's presence at the precise time and place of several drug transactions where the undercover witnessed Bejaran walk up to Ramirez's car with a wad of cash and return minutes later with meth, or for the various bank and phone records linking Ramirez to the transactions. And when the police arrested him, Ramirez was sitting in his car with Bejaran, $5200 and four baggies of meth. We needn't decide whether the sua sponte instruction had a prejudicial effect on the conspiracy charge because we reverse that conviction on other grounds.

## C. Sufficiency of the Evidence on the Conspiracy Charge

To make out a case for conspiracy, the government had to show that there was an agreement between Ramirez and someone else to distribute meth. *See United States* v. *Lennick*, 18 F.3d 814, 818 (9th Cir. 1994). Even viewing the evidence in the light most favorable to the government, there was no such agreement here. *See United States* v. *Dann*, 652 F.3d 1160, 1168 (9th Cir. 2011).

To prove conspiracy, the government had to show more than that Ramirez sold drugs to someone else knowing that the buyer would later sell to others. It had to show that Ramirez had an agreement with a buyer pursuant to which the buyer would "further distribute the drugs." *Lennick*, 18 F.3d at 819. "In the end, what we are looking for is evidence of a prolonged and actively pursued course of sales coupled with the seller's knowledge of and a shared stake in the buyer's illegal venture." *United States* v. *Thomas*, 284 F.3d 746, 752 (7th Cir. 2002) (internal quotation marks omitted); *cf. United States* v. *Mincoff*, 574 F.3d 1186, 1194 (9th Cir. 2009).

As in *Lennick* and *Thomas*, the government presented ample proof that the defendant possessed and sold drugs. *See Lennick*, 18 F.3d at 818; *Thomas*, 284 F.3d at 751. After all, three of the four meth sales the government engineered took place with Ramirez and the undercover in sight of each other. However, "[t]he sale of large quantities of controlled substances, without more, cannot sustain a conspiracy conviction." *Lennick*, 18 F.3d at 819 n.5 (internal quotation marks and alterations omitted). And the government presented no evidence indicating that Ramirez had any kind of involvement in Bejaran's drug sales. *Cf. United States* v. *Webster*, 623 F.3d 901, 907 (9th Cir. 2010).

Arguing in the alternative, the government advances an even weaker conspiracy theory: that Ramirez was working for a mysterious "Mark Johnson" who supplied Ramirez with meth on credit. The government didn't pursue this theory at trial and consequently can identify only one place in the record where it mentioned Johnson's name—when the prosecutor moved bank records with Johnson's name on them into evidence without comment. Tellingly, Johnson wasn't

named in the indictment, and when the government summarized its conspiracy case in its closing statement, it discussed only the Ramirez-Bejaran relationship. As the district judge summarized, "there is no evidence concerning this individual Mark Johnson other than a name in some records."

### D. Sentencing Enhancement

Thanks to a prior felony drug conviction for PCP possession, Ramirez received an automatic twenty-year mandatory minimum sentence on each of the counts that involved the possession or distribution of fifty grams or more of meth. *See* 21 U.S.C. § 841(b). Relying on *United States v. Buckland*, 289 F.3d 558, 568 (9th Cir. 2002) (en banc), Ramirez contends that the judge shouldn't have imposed a sentencing enhancement under 21 U.S.C. § 841(b) because the indictment didn't allege, and the jury didn't find beyond a reasonable doubt, that he had a prior drug felony. In *Buckland*, we applied the canon of constitutional avoidance to interpret section 841(b) so that a "material fact" that increases "the maximum sentence for a conviction" must be treated like an element of the crime rather than as a fact that can be determined by a judge based on a preponderance of the evidence. *Buckland*, 289 F.3d at 564, 568; *cf. Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). *Buckland* dealt only with the "material fact[s]" of drug type and quantity. *See* 289 F.3d at 568. Ramirez argues that we must apply the *Buckland* rule to his case because section 841(b) doesn't indicate that the fact of a prior conviction should be treated differently from facts related to drug type and quantity.

Nothing in *Buckland* suggests that its construction of section 841(b) applies to the fact of a prior conviction. It would be odd if it did, because we construed the statute to avoid a clash with *Apprendi*. *See Buckland*, 289 F.3d at 564, 568. *Apprendi* expressly excludes "the fact of a prior conviction" from its rule requiring that a fact that increases the maximum penalty of a crime be sent to a jury and proved beyond a reasonable doubt. *See* 530 U.S. at 490. And Ramirez doesn't identify any caselaw that directly supports his reading of section 841(b). Indeed, in at least one post-*Buckland* case, we've held that the judge didn't err by applying an enhancement under section 841(b) for a prior drug conviction without a jury finding. *See United States* v. *Hollis*, 490 F.3d 1149, 1157–58 (9th Cir. 2007), *abrogated on other grounds by DePierre* v. *United States*, 131 S. Ct. 2225 (2011); *see also United States* v. *Mills*, 280 F.3d 915, 923 (9th Cir. 2002).

\*     \*     \*

Ramirez's conspiracy conviction is **VACATED** and his case is **REMANDED** to the district court to grant a judgment of acquittal on that count alone and to conform the sentence accordingly. The remainder of Ramirez's convictions and sentence are **AFFIRMED**.