**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MARIA LOURDES MOE,
*Defendant-Appellant*.

No. 13-30224

D.C. No.
6:13-cr-00003-
SEH-1

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
November 17, 2014—Portland, Oregon

Filed March 27, 2015

Before: Richard R. Clifton, Milan D. Smith, Jr.,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Clifton;
Concurrence by Judge Hurwitz

## SUMMARY[*]

### Criminal Law

The panel affirmed a conviction for conspiracy to possess with intent to distribute methamphetamine.

Rejecting the defendant's contention that the evidence presented to the jury established only a buyer-seller transaction, the panel held that the evidence was sufficient to support her conviction for conspiracy, where the evidence indicated an ongoing relationship of mutual trust, there was testimony that the defendant was involved in the business of methamphetamine trafficking, there was evidence that the defendant's supplier knew that the defendant was engaged in redistributing the methamphetamine that she was buying from him, and the supplier had an interest in fostering those downstream sales.

The panel held that the district court did not err by failing to instruct the jury on how to determine a single conspiracy versus multiple conspiracies, where the defendant stood trial alone and the facts to do not support a multiple conspiracies defense.

The panel held that the district court did not err in rejecting the defendant's proposal to instruct the jury on the difference between a buyer-seller relationship and a conspiracy relationship, where the instructions as a whole accurately informed the jury that a conspiracy could not be

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

found based only on the sales by the supplier to the defendant.

The panel held that the district court did not err when it curtailed as irrelevant cross-examination of the supplier aimed at showing that he associated with other individuals and was involved in other conspiracies, where the multiple conspiracy theory of defense did not apply.

Concurring, Judge Hurwitz urged this court to follow the Seventh Circuit, which requires district courts to give a buyer-seller instruction whenever a jury could conceivably have determined that the buyer-seller relationship which existed did not involve an overarching conspiratorial agreement.

## COUNSEL

Michael Donahoe, Federal Defenders of Montana, Helena, Montana, for Defendant-Appellant.

Paulette L. Stewart, Assistant United States Attorney, Helena, Montana, for Plaintiff-Appellee.

**OPINION**

CLIFTON, Circuit Judge:

Maria Moe appeals her conviction for conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. Her primary arguments rest on the so-called "buyer-seller rule," under which a conviction for conspiracy cannot be based solely on the purchase of an unlawful substance, even though such a transaction necessarily involves an agreement between at least two parties, the buyer and the seller. "Rather, conspiracy requires proof of 'an agreement to commit a crime other than the crime that consists of the sale itself.' Were the rule otherwise, every narcotics sale would constitute a conspiracy." *United States v. Lennick*, 18 F.3d 814, 819 (9th Cir. 1994) (quoting *United States v. Lechuga*, 994 F.2d 346, 347 (7th Cir. 1993) (en banc)).

Moe contends that the evidence presented to the jury established only that she purchased methamphetamine from a supplier—that is, established only a buyer-seller transaction—not that she was engaged in a conspiracy with the seller in connection with subsequent distribution. She also contends that the district court should have given an instruction to the jury regarding the buyer-seller rule. We conclude that the evidence was sufficient to support the conviction. We further conclude that although a specific buyer-seller instruction may be useful and might be required in some circumstances, it was not necessary here. We are not persuaded by any of Moe's other arguments, and therefore affirm.

## I. Background

Maria Moe was indicted in January 2013 on two counts: conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, 21 U.S.C. § 846, and distribution of 50 grams or more of methamphetamine, 21 U.S.C. § 841(a)(1). She pleaded not guilty and went to trial.

During the two-day trial that followed, the government called five witnesses. These included four government agents and one cooperating witness, Shawn Ellifritt. Ellifritt testified that he supplied methamphetamine to Moe. Moe lived in Helena, Montana, but traveled to Spokane, Washington, to buy methamphetamine from Ellifritt. She typically purchased a half ounce of methamphetamine one time per month. From December 2009 until December 2010, Moe made at least seven purchases. Ellifritt estimated that these transactions involved approximately 140 grams of methamphetamine. Moe and Ellifritt communicated by phone. There were at least 94 cell phone contacts between Ellifritt and Moe, including 51 text messages. The two used a code to communicate regarding the availability of methamphetamine: for example, when Ellifritt texted Moe that the weather was bad, that meant methamphetamine was not available or there was potential trouble with law enforcement.

Moe filed motions for acquittal and for a new trial on sufficiency of the evidence grounds. Moe also proposed several supplemental jury instructions, including a multiple conspiracies instruction and an instruction on the difference between a buyer-seller relationship and a conspiracy relationship. The district court rejected both of these instructions.

The jury convicted Moe on the conspiracy count but could not reach a unanimous verdict on the distribution count, which was subsequently dismissed. Moe was sentenced to 66 months imprisonment and four years supervised release.

## II. Discussion

Moe presents three arguments on appeal. First, she asserts there was insufficient evidence before the jury to support her conviction for conspiracy. Second, she argues the district court erred by declining to give two proposed jury instructions. Third, she asserts that the district court erred by curtailing her cross-examination of a government witness. We consider these challenges in turn.

### A. Sufficiency of the Evidence

We employ "a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." *Id*. "Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Although we review a claim of insufficient evidence *de novo*, *United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008) (per curiam), our evaluation remains deferential and accords respect to the jury's role "as weigher of the evidence," *Jackson*, 443 U.S. at 319.

The elements of conspiracy are "(1) an agreement to accomplish an illegal objective, and (2) the intent to commit the underlying offense." *United States v. Herrera-Gonzales*, 263 F.3d 1092, 1095 (9th Cir. 2001). But although "the essence of conspiracy is agreement," *United States v. Feola*, 420 U.S. 671, 692 (1975), not every agreement to commit an illegal objective may serve as the basis for a conspiracy conviction.

Under the buyer-seller rule, "mere sales to other individuals do not establish a conspiracy to distribute or possess with intent to distribute . . . ." *Lennick*, 18 F.3d at 819 n.4. This "narrow exception" to conspiracy liability, *United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009), applies even though "[a] drug sale is itself an agreement: a buyer and seller come together, agree on terms, and exchange money or commodities at the settled rate." *United States v. Brown*, 726 F.3d 993, 998 (7th Cir. 2013). Instead, a conviction for "conspiracy requires proof of an agreement to commit a crime other than the crime that consists of the sale itself." *Lennick*, 18 F.3d at 819 (quotation marks omitted).

Thus, for a charge of conspiracy to possess a drug with intent to distribute, "the government must show that the buyer and seller had an agreement to further distribute the drug in question." *Id*. at 819 n.4. "Express agreement is not required; rather, agreement may be inferred from conduct." *United States v. Hegwood*, 977 F.2d 492, 497 (9th Cir. 1992); *see also Direct Sales Co. v. United States*, 319 U.S. 703, 714 (1943) ("[I]t can make no difference the agreement was a tacit understanding, created by a long course of conduct and executed in the same way.").

Here, Moe asserts that the evidence before the jury proved only that Ellifritt sold methamphetamine to her. The government argues that Moe and Ellifritt's relationship was more than a purely transactional one and instead crossed the line into conspiracy.

Distinguishing between a conspiracy and a buyer-seller relationship requires a fact-intensive and context-dependent inquiry that is not amenable to bright-line rules. *See United States v. Hawkins*, 547 F.3d 66, 74 (2d Cir. 2008) (noting the "highly fact-specific" nature of the "inquiry into whether the circumstances surrounding a buyer-seller relationship establish an agreement to participate in a distribution conspiracy"). Certain principles are established, however.

A casual sale of drugs, of a quantity consistent with personal use on the part of the buyer, with no evidence of any subsequent (or planned) redistribution of purchased drugs, will likely fall within the ambit of the buyer-seller rule. *See Lennick*, 18 F.3d at 819; *see also United States v. Medina*, 944 F.2d 60, 65–66 (2d Cir. 1991) (characterizing "the typical buy-sell scenario" as "involv[ing] a casual sale of small quantities of drugs" and contrasting that scenario to a case in which "there is advanced planning among the alleged co-conspirators to deal in wholesale quantities of drugs obviously not intended for personal use"), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137 (1995).

In contrast, we will uphold a conviction for conspiracy between buyer and seller where there is "'evidence of a prolonged and actively pursued course of sales coupled with the seller's knowledge of and a shared stake in the buyer's illegal venture.'" *United States v. Ramirez*, 714 F.3d 1134,

1140 (9th Cir. 2013) (quoting *United States v. Thomas*, 284 F.3d 746, 752 (7th Cir. 2002)).

A number of factors may be relevant in deciding whether there is sufficient evidence to support a conviction for conspiracy. We look not just to the characteristics of individual transactions but to "the 'entire course of dealing'" between alleged co-conspirators. *United States v. Mincoff*, 574 F.3d 1186, 1194 (9th Cir. 2009) (quoting *Thomas*, 284 F.3d at 753). "No single factor is dispositive." *Hawkins*, 547 F.3d at 74. Instead, a reviewing court should "take into account all . . . the evidence surrounding the alleged conspiracy and make a holistic assessment of whether the jury reached a reasonable verdict." *United States v. Long*, 748 F.3d 322, 326 (7th Cir. 2014) (quotation marks omitted).

Among the factors that courts have considered relevant in making this determination are the following: whether the drugs were sold on credit[1] or on consignment;[2] the frequency of sales;[3] the quantity of drugs involved;[4] the level of trust

---

[1] *E.g.*, *Mincoff*, 574 F.3d at 1193 ("[S]elling drugs on credit is especially indicative of a conspiracy because it gives the seller a stake in the buyer's successful resale of the drugs.") (alteration in original) (quoting *United States v. Bender*, 539 F.3d 449, 454 (7th Cir. 2008)).

[2] *E.g.*, *United States v. Vallar*, 635 F.3d 271, 287 (7th Cir. 2011).

[3] *E.g.*, *United States v. Reid*, 523 F.3d 310, 317 (4th Cir. 2008) ("[E]vidence of continuing relationships and repeated transactions can support the finding that there was a conspiracy, especially when coupled with substantial quantities of drugs.").

[4] In *Mincoff*, the court concluded that "a rational trier of fact could have found the buyer-seller rule inapplicable to the facts of this case" because, among other things, the "large quantities" of drugs involved "could

demonstrated between buyer and seller, including the use of codes;[5] the length of time during which sales were ongoing;[6] whether the transactions were standardized;[7] whether the parties advised each other on the conduct of the other's business;[8] whether the buyer assisted the seller by looking for other customers;[9] and whether the parties agreed to warn each

---

support an inference of further distribution." 574 F.3d at 1193–94. It is true that "'[t]he sale of large quantities of controlled substances, without more, cannot sustain a conspiracy conviction.'" *Ramirez*, 714 F.3d at 1140 (alteration in original) (quoting *Lennick*, 18 F.3d at 819 n.5). But while the quantity of sales *alone* cannot support a conspiracy conviction, it nevertheless is a relevant factor to be considered. *Cf. United States v. Howard*, 966 F.2d 1362, 1364 (10th Cir. 1992) (noting that a "huge quantity" of narcotics "permits an inference of conspiracy" although it is not "*by itself . . .* enough to convict defendant") (emphasis added).

[5] *E.g.*, *United States v. Pressler*, 256 F.3d 144, 155 (3d Cir. 2001) (concluding that where buyer and seller "conducted their business in code," this "demonstrated a considerable degree of coordination and suggested the presence of a cooperative relationship"); *see also United States v. Contreras*, 249 F.3d 595, 599 (7th Cir. 2001) (looking to "the level of mutual trust between the buyer and seller" as a relevant factor).

[6] *E.g.*, *Direct Sales*, 319 U.S. at 713 (emphasizing "prolonged cooperation"); *see also United States v. Gibbs*, 190 F.3d 188, 199 (3d Cir. 1999) (noting "length of affiliation"); *Lechuga*, 994 F.2d at 350 ("Prolonged cooperation is neither the meaning of conspiracy nor an essential element, but it is one type of evidence of an agreement that goes beyond what is implicit in any consensual undertaking, such as a spot sale.").

[7] *E.g.*, *Gibbs*, 190 F.3d at 199.

[8] *E.g.*, *Brown*, 726 F.3d at 999.

[9] *Id*.

other of potential threats from competitors or law enforcement.**[10]**

We now turn to the facts of this case. Between December 2009 and December 2010, Ellifritt sold methamphetamine to Moe on at least seven occasions. These transactions had a standard format. Moe was not just a casual or occasional buyer. She described Ellifritt as a reliable source of methamphetamine, a "gold mine." Moe and Ellifritt communicated closely together and coordinated their actions, thereby demonstrating prolonged cooperation. They had their own code for communicating regarding the availability of drugs. Significantly, Ellifritt took affirmative steps to warn Moe when a threat from law enforcement was present: on the same day that law enforcement searched Ellifritt's residence, Ellifritt texted Moe, "Bad weather, lay low."

These are indications of an ongoing relationship of "mutual trust," beyond a simple buyer-seller transaction. *See Mincoff*, 574 F.3d at 1194; *Pressler*, 256 F.3d at 155 (noting that the use of codes is one indication of a conspiracy rather than a buyer-seller relationship). The jury heard testimony that Moe was involved in the business of methamphetamine trafficking and had a supplier in Washington. There was evidence that Ellifritt knew that Moe was engaged in redistributing the methamphetamine that she was buying from him: Ellifritt was told that Moe was "the money" in an ongoing downstream redistribution effort. Ellifritt had an interest in fostering those downstream sales, which created the demand for his repeated sales to Moe.

---

**[10]** *E.g.*, *Vallar*, 635 F.3d at 287.

We conclude that the evidence before the jury, viewed in the light most favorable to the government, was sufficient to support Moe's conviction for conspiracy.

### B.  *Jury Instructions*

Next, Moe asserts that the district court erred in failing to give two supplemental jury instructions that she proposed. "A criminal defendant has a constitutional right to have the jury instructed according to h[er] theory of the case, provided that the requested instruction is supported by law and has some foundation in the evidence." *United States v. Anguiano-Morfin*, 713 F.3d 1208, 1209 (9th Cir. 2013) (quotation marks omitted). That said, "[w]e review the jury instructions as a whole and accord the trial judge substantial latitude so long as the instructions fairly and adequately covered the issues presented." *United States v. Bauer*, 84 F.3d 1549, 1560 (9th Cir. 1996) (citation omitted). The abuse of discretion standard governs our review of "the language and formulation of a jury instruction," *United States v. Cortes*, 757 F.3d 850, 857 (9th Cir. 2013), and our review of "whether [an instruction] has some foundation in the evidence," *Anguiano-Morfin*, 713 F.3d at 1209. "Whether an instruction is supported by law is reviewed *de novo*." *United States v. Marguet-Pillado*, 648 F.3d 1001, 1006 (9th Cir. 2011) (quotation marks omitted).

### 1.  Multiple Conspiracies

Moe asserts that the district court erred by failing to instruct the jury on how to determine a single versus multiple conspiracies. We are not persuaded.

"A multiple conspiracies instruction is generally required where the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment." *United States v. Anguiano*, 873 F.2d 1314, 1317 (9th Cir. 1989). The instruction is needed in order to mitigate the problem of "transference or 'spillover' of guilt" from one co-defendant to another. *Id.* at 1318. In contrast, "[a] multiple conspiracy instruction is not required when a defendant stands trial alone because there is no problem of spillover." *United States v. Liu*, 631 F.3d 993, 1000 (9th Cir. 2011) (quotation marks omitted). Here, Moe stood trial alone and the facts do not support a multiple conspiracies defense.

### 2. Buyer-Seller Rule

Next, Moe suggests that the district court erred in rejecting her proposal to instruct the jury on the difference between a buyer-seller relationship and a conspiracy relationship.

"A defendant is not entitled to have the jury instructed in the particular language of h[er] choice." *United States v. Montgomery*, 150 F.3d 983, 1002 (9th Cir. 1998) (quotation marks omitted). Nevertheless, a "district court's failure to give a defendant's requested instruction that is supported by law and has some foundation in the evidence warrants per se reversal, unless other instructions, in their entirety, adequately cover that defense theory." *Marguet-Pillado*, 648 F.3d at 1006 (citation and quotation marks omitted). Thus, our review of a trial court's decision to deny a requested jury instruction requires that we answer three

questions. First, was the proposed instruction supported by
law? Second, did the proposed instruction have some
foundation in the evidence? Third, did other instructions
given to the jury, considered in their entirety, fail to cover the
defense theory? Where the answer to all three questions is
"yes," we must reverse and remand for a new trial.

First, was a buyer-seller defense supported by law? We
conclude that it was. Our court has made it clear a buyer-
seller relationship alone cannot, as a matter of law, support a
conviction for conspiracy. *See Lennick*, 18 F.3d at 819 n.4.

Second, was there some evidentiary support for a buyer-
seller instruction in this case? There was. As we conclude
above, the evidence before the jury was capable of supporting
the conclusion that Moe and Ellifritt were co-conspirators.
But there was at least some evidence that cut the other way,
including evidence that Ellifritt did not sell to Moe on credit
or consignment, and that Ellifritt had no direct involvement
in any reselling of the methamphetamine by Moe. A jury
could have concluded that Ellifritt was not party to a
conspiracy that encompassed downstream resales and that the
relationship between Moe and Ellifritt was limited to that of
a buyer and a seller.

Third, did the other instructions given to the jury fail to
fully convey the distinction between a buyer-seller
relationship and a co-conspiracy relationship? Here, we
conclude the answer is no. The district court instructed the
jury on the general elements of conspiracy. This instruction
informed the jury that "[a] conspiracy is a kind of criminal
*partnership*" (emphasis added), and that, in order to convict,
the jury had to "find that there was a *plan* to commit at least
one of the crimes charged in the indictment as an object of the

conspiracy." (emphasis added). The only other crime charged in the indictment concerned Moe's alleged distribution in Montana to other purchasers downstream, not Moe's purchases from Ellifritt. We presume the jury followed these instructions. *See Zafiro v. United States*, 506 U.S. 534, 540 (1993). The instructions as a whole accurately informed the jury that a conspiracy could not be found based only on the sales by Ellifritt to Moe. *See Bauer*, 84 F.3d at 1560–61.

District courts may decide to provide a jury instruction in drug conspiracy cases that focuses specifically on the difference between a buyer-seller relationship and a co-conspirator relationship. Such an instruction might assist a jury in working through the subtle and fact-intensive determinations that must be made, and in some cases they might be essential.[11] But in light of the "substantial latitude"

---

[11] We emphasize that we do not hold as a matter of law that a specific buyer-seller instruction is never required when a jury is properly instructed on the elements of conspiracy. Several circuits have adopted such a rule. *See, e.g.*, *Riggs v. United States*, 209 F.3d 828, 832–33 (6th Cir. 2000), *abrogated on other grounds by Moss v. United States*, 323 F.3d 445 (6th Cir. 2003); *United States v. Asibor*, 109 F.3d 1023, 1035 (5th Cir. 1997); *but see United States v. Mims*, 92 F.3d 461, 464 (concluding that a buyer-seller instruction is always required if the jury "could conceivably have determined that the buyer-seller relationship which existed did not involve an overarching conspiratorial agreement"), *on reh'g*, 101 F.3d 494 (7th Cir. 1996). We hold only that, under the circumstances of this case, it was not error to fail to give the instruction Moe requested.

In other circumstances, an instruction on the buyer-seller rule might well be required. For instance, suppose that another count in Moe's indictment had been simple possession based on her purchases from Ellifritt. Or, suppose that Ellifritt had been named as a defendant and charged both with the sale (distribution) to Moe and with conspiracy to distribute downstream. Such cases might present more substantial risk of a jury mistaking a sale as a basis on which to find a conspiracy between

we accord trial courts in formulating jury instructions, *Bauer*, 84 F.3d at 1560, we are not prepared to hold that the district court erred in this case when it denied Moe's requested buyer-seller instruction.

### C. Cross-Examination

Finally, Moe asserts that the trial court erred when it curtailed cross-examination of Ellifritt aimed at showing that he associated with other individuals and was involved in other conspiracies. Specifically, Moe suggests that had defense counsel been allowed to conduct the cross examination he prepared, there is no doubt that the jury would have realized that there was no single conspiracy involving many but at most a random collection of named drug users and sellers. She asserts that this resulted in a denial of her Fifth and Sixth Amendment rights to defend the case brought against her. The district court, for its part, concluded that the testimony was not relevant.

Criminal defendants have a constitutional right to "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quotation marks omitted). With respect to cross-examination, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). And "[a] limitation on cross examination does not violate the

---

a buyer and seller in the absence of a more explicit instruction detailing the distinction. In these and other circumstances, a buyer-seller instruction might be necessary. In this case, however, it was not.

Confrontation Clause unless it limits relevant testimony." *United States v. Holler*, 411 F.3d 1061, 1066 (9th Cir. 2005) (quotation marks omitted). Here, the testimony was not relevant because the multiple conspiracy theory of defense did not apply. That Ellifritt might have had dealings with others did not tend to disprove the possibility of the alleged conspiracy between Moe and Ellifritt. Thus, the district court did not err by limiting the cross-examination of Ellifritt to the conspiracy that was charged.

## III.    Conclusion

We affirm Moe's conviction for conspiracy under 21 U.S.C. § 846.

**AFFIRMED.**

HURWITZ, Circuit Judge, concurring:

I agree that the instructions in this case, as a whole, "accurately informed the jury that a conspiracy could not be found based only on the sales . . . to Moe," and that Moe demonstrated no prejudice from the court's failure to give a separate buyer-seller instruction. I therefore join the panel opinion.

Even when the instructions accurately inform the jury of what is required to find a conspiracy, however, "the line between a conspiracy and a mere buyer-seller relationship is difficult to discern." *United States v. Gee*, 226 F.3d 885, 895 (7th Cir. 2000). Recognizing this, the Seventh Circuit sensibly requires district courts to give a buyer-seller

instruction whenever a jury "could conceivably have determined that the buyer-seller relationship which existed did not involve an overarching conspiratorial agreement." *United States v. Mims*, 92 F.3d 461, 464 (7th Cir. 1996); *Gee*, 226 F.3d at 895. To determine if a case "presents one of those situations," that court evaluates criteria such as whether (1) "[t]he proffered evidence of a conspiracy was circumstantial and not overwhelming," (2) "[t]he evidence was as consistent with a buyer-seller relationship as it was with a conspiracy," and (3) "[t]he instructions allowed the jury to make a guilty finding without determining whether the government had proved the existence of a conspiracy." *Gee*, 226 F.3d at 895.

I urge our court to follow the Seventh Circuit. Although a federal judge or experienced criminal practitioner can discern that a buyer-seller relationship cannot alone establish a conspiracy, this concept is far from intuitive for jurors, particularly when, as here, "the existence of a conspiratorial agreement was closely contested and conflicting evidence was presented." *Id.* at 896 (internal quotation marks omitted). The buyer-seller instruction serves "to ensure a jury finding on this essential element" of conspiracy. *Id.* (internal quotation marks omitted).

District courts, of course, have "substantial latitude" in formulating instructions. *United States v. Bauer*, 84 F.3d 1549, 1560 (9th Cir. 1996). But properly distinguishing between a buyer-seller relationship and a conspiracy regularly goes to the heart of "the essential fairness and integrity of the trial." *Gee*, 226 F.3d at 896 (internal quotation marks omitted). A buyer-seller instruction facilitates the jury's resolution of this recurrent issue, and thus well serves the interests of justice.