

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 01 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-10284 |
| Plaintiff - Appellee, | D.C. No. 2:07-cr-00248-WBS-2 |
| v. | |
| LARRY SIXTO AMARO, AKA Paqui, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-10285 |
| Plaintiff - Appellee, | D.C. No. 2:07-cr-00248-WBS-3 |
| v. | |
| GERARDO LOPEZ MORA, AKA Jerry, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-10312 |
| Plaintiff - Appellee, | D.C. No. 2:07-cr-00248-WBS-6 |
| v. | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

JASON MICHAEL STEWART HANSON, AKA Red,

　　　　　Defendant - Appellant.

UNITED STATES OF AMERICA,

　　　　　Plaintiff - Appellee,

　　v.

ERNEST PAUL KILLINGER, AKA Powder,

　　　　　Defendant - Appellant.

No. 11-10313

D.C. No. 2:07-cr-00248-WBS-4

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, Senior District Judge, Presiding

Argued and Submitted May 11, 2015
San Francisco, California

Before: O'SCANNLAIN, IKUTA, and N.R. SMITH, Circuit Judges.

　　Larry Amaro, Ernest Killinger, Gerardo Mora, and Jason Stewart-Hanson (collectively, "Appellants") appeal their convictions for various drug-related offenses. Killinger also appeals his sentence. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we affirm.

2

The district court did not err in denying Appellants' motion to suppress wiretap evidence. The affidavit showed that the FBI contemplated or employed a combination of at least eleven different traditional investigative techniques over the course of a year before seeking a wiretap, and still had been unable to accomplish its goals. Further, the affidavit explained in thorough and case-specific detail why other investigative procedures would be too dangerous or unlikely to succeed in developing an effective case against all the persons involved in the DTO conspiracy. *See* 18 U.S.C. § 2518(1)(c); *see also United States v. McGuire*, 307 F.3d 1192, 1197 (9th Cir. 2002). The FBI's investigative purpose to dismantle the DTO conspiracy was not so general or vast "as to manufacture necessity in all circumstances." *United States v. Blackmon*, 273 F.3d 1204, 1211 (9th Cir. 2001). The FBI was not required to continue using its confidential informants when they had been unable to obtain information about the conspiracy's source of supply for narcotics or its money laundering methods. Nor was the FBI required to release one of its confidential informants from jail in order to use him more effectively. *See United States v. Canales Gomez*, 358 F.3d 1221, 1225–26 (9th Cir. 2004). Finally, the FBI was not required to conduct additional surveillance or trash searches before seeking a wiretap because "the wiretap statute does not mandate the indiscriminate pursuit to the bitter end" of every traditional investigative

procedure.  *See United States v. Bennett*, 219 F.3d 1117, 1122 (9th Cir. 2000) (internal quotation marks omitted).

The district court did not err in denying Appellants' request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  Appellants failed to make a threshold showing that any of the omissions they cited were "material to the district court's finding of necessity."  *See United States v. Shryock*, 342 F.3d 948, 977 (9th Cir. 2003).

The district court did not abuse its discretion when it denied Appellants' pretrial motions to exclude gang-related evidence.  This evidence was, at minimum, potentially relevant to explain the formation and purpose of the conspiracy, *see* Fed. R. Evid. 403, and the district court could reasonably defer a ruling on whether the probative value of particular evidence would be "substantially outweighed by a danger of . . . unfair prejudice" until trial.  *See id.*

The district court did not err when it refused to give Stewart-Hanson's proposed buyer-seller jury instruction because the proposed instruction had no foundation in evidence.  *See United States v. Moe*, 781 F.3d 1120, 1127–28 (9th Cir. 2015).  At trial, the government presented significant "evidence of a prolonged and actively pursued course of sales coupled with [Diaz's] knowledge of and a shared stake in [Stewart-Hanson's] illegal venture."  *See id.* at 1125 (internal

4

quotation marks omitted).  None of the evidence Appellants point to suggests that the sales between Diaz and Stewart-Hanson amounted to merely a "casual sale of drugs, of a quantity consistent with personal use on the part of [Stewart-Hanson], with no evidence of any subsequent (or planned) redistribution of purchased drugs."  *Cf. id.* at 1125, 1128.

Because Oak was working as a government agent, he was "not criminally responsible for the commission of the offense," *see* U.S.S.G. § 3B1.1 cmt. 1, and the district court therefore erred in relying on Killinger's supervision of Oak in determining that Killinger was a "manager or supervisor" under § 3B1.1(b) of the Sentencing Guidelines.  Killinger raised this issue in a separate brief, in which he argued that the district court erred in enhancing his sentence under § 3B1.1.  The government failed to file a response brief, an error that is sanctionable under Rule 31(c) of the Federal Rules of Appellate Procedure (providing that "[a]n appellee who fails to file a brief will not be heard at oral argument unless the court grants permission").  At oral argument, the government admitted that this failure to respond was an oversight.

Killinger brought this oversight to the government's attention nearly a week before oral argument in a letter filed pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure.  Yet the government still failed to take any action to address

5

and correct its mistake. Instead, the government waited until oral argument to assert for the first time that the court should sua sponte determine that any error in enhancing Killinger's sentence was harmless, and cited supplemental authority without previously serving it on the court and the opposing party, in direct contravention of Rule 28(j) of the Federal Rules of Appellate Procedure.

This conduct falls well below the standard we expect from the government. We have long recognized that "[a]s an officer of the court, the prosecutor has a heavy responsibility both to the court and to the defendant to conduct" fair proceedings. *See United States v. Escalante*, 637 F.2d 1197, 1203 (9th Cir. 1980). The prosecutor here failed to fulfill these responsibilities by neglecting to inform both the court and the defendants of his arguments. The government's arguments are therefore waived. *United States v. Vallejo*, 237 F.3d 1008, 1026 (9th Cir.), *amended*, 246 F.3d 1150 (9th Cir. 2001).

Nevertheless, we have authority to consider harmlessness sua sponte in cases where the harmlessness of the error is not reasonably debatable and the economy of judicial resources would be served. *See United States v. Brooks*, 772 F.3d 1161, 1171 (9th Cir. 2014). These factors are present here. Reversal and further litigation would not only be costly, but also futile because the harmlessness of the district court's error is certain in light of the ample evidence in the record that

6

Killinger exercised the requisite control over others. *See id.*; *see also United States v. Whitney*, 673 F.3d 965, 976 (9th Cir. 2012). The record establishes that Killinger oversaw members of the conspiracy operating in various East Bay cities, and that Isaac Benavidez was managing the cell phone store under Killinger's supervision in order to launder drug money and conduct drug operations. *See United States v. Gadson*, 763 F.3d 1189, 1222 (9th Cir. 2014). The record also establishes that Killinger exercised decision making authority over the allocation of drug trafficking proceeds and procurement of narcotics, which are relevant factors the district court can consider in determining Killinger's role in the conspiracy. *See* U.S.S.G. § 3B1.1 cmt. 4. We therefore affirm the district court's imposition of this sentencing enhancement.

**AFFIRMED.**