TALLMAN, Circuit Judge,
concurring in part and dissenting in part:
I concur in all aspects of the majority’s disposition except for the reversal of the Count I conviction for conspiracy to distribute methamphetamine. See Majority Disposition at 422-23. As to the court’s conclusion that the evidence was insufficient to support the guilty verdict on that charge, I respectfully dissent. Unlike a jury, we are tasked with viewing the evidence in the light most favorable to support its determination. United States v. Mincoff, 574 F.3d 1186, 1191-92 (9th Cir.2009). We all agree the jury properly found Gill guilty of possession with intent to distribute methamphetamine, as charged in Count II. The question the jury answered affirmatively in Count I was whether Gill conspired with Erickson to acquire the drug for distribution when they pooled their money to get a better price on larger quantities from the supplier of the methamphetamine. Applying the teachings of Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), a rational juror could certainly find on this record that the prosecution established the essential elements of conspiracy to distribute methamphetamine beyond a reasonable doubt.
The majority overlooks the fact that conspiracy to distribute drugs requires only an agreement to accomplish a criminal objective. See United States v. Suarez, 682 F.3d 1214, 1219 (9th Cir.2012). No overt act is required. See id. Here, the jury had ample evidence of an agreement between Gill and Erickson to acquire drugs so they could each thereafter distribute methamphetamine. The jury saw the real time text messages between Gill and Erickson, in which they discussed pooling their money together to buy methamphetamine from a Mexican supplier. The jury heard from government witnesses that the amount of methamphetamine Gill and Erickson could obtain with their pooled resources was a large quantity meant for distribution. We should not create an unnecessary split with our sister circuits who have ruled that pooling resources to buy distribution levels of drugs may support a conviction for conspiracy to distribute. See, e.g., United States v. Foy, 641 F.3d 455, 465-66 (10th Cir.2011); United States v. Thornton, 609 F.3d 373, 380 (6th Cir.2010); United States v. Harris, 567 F.3d 846, 851 (7th Cir.2009). Common sense tells us the same. The *424 text messages show that Gill and Erickson believed. that by pooling their resources, they could get a better wholesale price before reselling the methamphetamine to their customers. The text messages also established that Gill and Erickson met the same day so Erickson could give her share of the buy money to Gill.
But that’s not all the jury heard about Gill and Erickson. The jury also had evidence that when asked about a later text exchange, Erickson said that “she and Mr. Gill were discussing putting together a drug deal ... [though she maintained] that it never came together.” The jury also learned that Gill admitted to the officers executing the search warrant that he was a “drug dealer” and that he had given Erickson an amount of methamphetamine an officer later testified was a “dealer amount of methamphetamine, not a user amount.” This “dealer amount” was then found at Gill’s house in Erickson’s purse. But that’s still not all the jury knew about Gill’s and Erickson’s activities. Also discovered at Gill’s house were additional distribution-level quantities of methamphetamine, digital scales, replica firearms, a police scanner, several cell phones, a Tupperware container with methamphetamine residue, and $600 cash-$156 of which was in Erickson’s purse. Also present during the search was Erickson herself, who the officers learned had been staying at Gill’s house. In short, both had a motive to pool their resources, they did so, and then jointly were found to later be in possession of the drugs and distribution paraphernalia-, which are the tools of their illicit trade. What more did the jury need to support the sensible conclusion that they conspired to distribute methamphetamine?
The majority relies on United States v. Moe, 781 F.3d 1120 (9th Cir.2015), to imply that a conspiracy to distribute requires evidence of “a prolonged and actively pursued course” or “a shared stake in the [other] buyer’s illegal venture.” Majority Disposition at 422. But Moe actually emphasizes that “[distinguishing between a conspiracy and a buyer-seller relationship requires a fact-intensive and context-dependent inquiry” that does not turn on specific factors or bright-line rules. 781 F.3d- at 1125. Taking the evidence in the light most favorable to support its collective judgment, a rational jury could find that the evidence presented demonstrated more than a buyer-seller relationship. See id. at 1125-26 (recognizing that factors such as “mutual trust” and “whether the transactions were standardized” were also relevant to distinguish conspirators from buyers-sellers).
We should affirm Gill’s conviction for conspiracy to distribute methamphetamine.