**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    14-10453 |
| Plaintiff-Appellee, | D.C. No. 1:08-cr-00739-SOM-1 |
| v. | |
| RAMIRO HERNANDEZ, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
Susan Oki Mollway, District Judge, Presiding

Argued and Submitted October 11, 2017
Honolulu, Hawaii

Before:  SCHROEDER, D.W. NELSON, and McKEOWN, Circuit Judges.

Ramiro Hernandez ("Hernandez") appeals his conviction and 300-month

sentence for: (Count One) conspiracy to distribute and possess with intent to

distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C.

§§ 846, 841(a)(1), and 841(b)(1)(A); (Count Two) possession with intent to

_____

\*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2; and (Count Three) attempt to possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2.  We have jurisdiction under 28 U.S.C. § 1291, and we **AFFIRM**.

1.  Hernandez's Sixth Amendment confrontation rights were not violated at trial.  First, the district court did not abuse its discretion by admitting into evidence Raymond Villagomez's ("Villagomez") statements against Hernandez under Federal Rule of Evidence 804(b)(6) (the "forfeiture by wrongdoing" exception). As explained by the court, a preponderance of the evidence supported the conclusion that Hernandez intended for and caused Villagomez to be unavailable at trial, and that, as a result, the admission of Villagomez's statements did not violate the Confrontation Clause.  *See Giles v. California*, 554 U.S. 353, 359 (2008) (explaining that the forfeiture by wrongdoing exception applies against a criminal defendant when the defendant acted with the design to prevent the witness from testifying).  That evidence included the facts that: (1) Hernandez's relatives and associates threatened Villagomez to convince him not to testify; (2) Villagomez's identity as a witness was not readily available to outside parties and therefore was likely communicated to Hernandez's relatives by or at the direction of Hernandez;

2

and (3) Hernandez repeatedly nodded his head when Villagomez refused to answer questions at trial. *See United States v. Hernandez*, No. CRIM. 08-00739 SOM, 2012 WL 1580454, at \*7 (D. Haw. May 3, 2012) (explaining that "the nature of the information (that Villagomez was cooperating with the United States against Hernandez), as well as the nature of the people with whom Villagomez . . . had altercations, supports the conclusion that Hernandez was involved in getting that information to people for the purpose of having them intimidate Villagomez").

Second, the district court did not err by admitting into evidence recorded phone calls between Jose Perez ("Perez") and Hernandez in which Perez called Hernandez at the direction of U.S. Drug Enforcement Administration agents to confirm Hernandez's involvement in the plan to distribute the methamphetamine. Because Perez's statements to Hernandez were not offered for the truth of the matter asserted, the Confrontation Clause did not bar their admission. *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) (explaining that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted"). Nor did the district court err by admitting the agents' testimony regarding instructions given to Perez before Perez called Hernandez. For reasons similar to those explained in *United States v. Gouveia*, 468 F. App'x 793, 796 (9th Cir. 2012) (Hernandez's co-defendant's

3

appeal), the agents' instructions "did not indicate to the jury that Perez had made incriminating statements" about Hernandez, or that Perez had identified Hernandez as his supplier. Indeed, the agents' plan for Perez to call Hernandez could have resulted from a law enforcement tip or other source implicating Hernandez in the scheme to distribute the methamphetamine.

2. The district court did not err by denying Hernandez's motion for a new trial and judgment of acquittal on the basis of insufficient evidence. Viewing the evidence in the light most favorable to the government, a rational trier of fact could have found Hernandez guilty beyond a reasonable doubt on all counts of the indictment. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (explaining that the "critical inquiry" when reviewing a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

With respect to Counts 1 and 3, the following evidence supports a reasonable inference that Hernandez agreed with co-conspirators to distribute methamphetamine, and that he took substantial steps to possess with the intent to distribute methamphetamine in July 2006: (1) telephone records between Hernandez and Perez and Gouveia during the course of the conspiracy; (2) three

4

recorded conversations between Hernandez and Perez in which Hernandez acknowledged receipt of methamphetamine in Hawaii and instructed Perez to collect money; (3) testimony sufficient to establish Hernandez's identity on those recordings; (4) testimony that Hernandez taught a witness to hide drugs inside a vehicle employing the same method as the one used in the two shipments; and (5) Villagomez's statements describing Hernandez's role in acquiring the methamphetamine from a source in Mexico and shipping it to Hawaii. *See United States v. Moe*, 781 F.3d 1120, 1124–25 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 342 (2015) ("[F]or a charge of conspiracy to possess a drug with intent to distribute, the government must show that the buyer and seller had an agreement to further distribute the drug in question.") (citation and internal quotation marks omitted); *United States v. Mincoff*, 574 F.3d 1186, 1195 (9th Cir. 2009) ("An attempt conviction requires evidence that a defendant intended to violate the statute and took a substantial step toward completing the violation.") (citation omitted).

With respect to Count 2, the evidence supports a reasonable inference that the car that arrived in Hawaii in March 2006 was used to transport methamphetamine. As a result, in light of the (1) above-referenced evidence that Hernandez conspired and participated in the July 2006 shipment; (2) unique similarities between the March and July 2006 shipments; (3) common identities of

5

the co-conspirators involved in the two shipments; and (4) evidence that methamphetamine was hidden in both shipments in the same way that Hernandez had taught a witness to hide drugs, a reasonable juror could infer that Hernandez also aided in the March 2006 shipment with the intent that his co-conspirators possess and distribute methamphetamine. *See United States v. Sanchez-Mata*, 925 F.2d 1166, 1168 (9th Cir. 1991) ("A conviction for possession with intent to distribute narcotics may be based on one of three legal theories: (1) co-conspirator liability[]; (2) aiding and abetting[]; and (3) exercising dominion and control over the contraband.") (citation omitted).

3. Hernandez has not demonstrated that the government violated its discovery obligations before or during trial. Because Hernandez has failed to identify any evidence that the government allegedly failed to produce, and has not demonstrated the materiality of any such evidence, we reject Hernandez's arguments as meritless. *See Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (explaining that, "for *Brady* purposes . . . favorable evidence is material . . . if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.") (citation and internal quotation marks omitted). We also reject as meritless Hernandez's unsupported

claim that the government's alleged failure to grant a witness immunity denied him his right to a fair trial.

**AFFIRMED.**