**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 19 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-30237 |
| Plaintiff-Appellee, | D.C. No. 3:19-cr-00128-RRB-MMS-1 |
| v. | |
| PETER MICHAEL BURNO, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted November 7, 2022
Seattle, Washington

Before: IKUTA and COLLINS, Circuit Judges, and FITZWATER,** District Judge.

Memorandum joined by Judge COLLINS and Judge FITZWATER;
Partial Concurrence and Dissent by Judge IKUTA

Peter Burno appeals his conviction, after a jury trial, of a single charge of

conspiracy to possess a controlled substance with intent to distribute in violation of

21 U.S.C. §§ 846 and 841(b)(1)(A). We affirm.

1. There was sufficient evidence presented at Burno's trial to support his

---

\* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Sidney A. Fitzwater, United States District Judge for the
Northern District of Texas, sitting by designation.

conviction of conspiracy to possess methamphetamine with intent to distribute.

"The evidence is sufficient to support a conviction if, 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Milwitt*, 475 F.3d 1150, 1154 (9th Cir. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (restoring original emphasis in *Jackson* that was deleted by *Milwitt*)).  The elements of a drug conspiracy charge under § 846 are (1) that there was an "agreement" between the defendant and others that the "underlying crime be committed by some member of the conspiracy"; and (2) that "the defendant had the 'intent to effectuate the object of the conspiracy.'" *United States v. Collazo*, 984 F.3d 1308, 1318–19 (9th Cir. 2021) (en banc) (citations omitted). Here, the indictment alleged a conspiracy to possess, with the intent to distribute, 500 grams or more of a mixture or substance containing methamphetamine.  *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A).

Burno contends that there was no evidence either that he entered into the requisite agreement that drugs be possessed *with the intent to distribute* or that he had the intent to effectuate such a possession with intent to distribute.  In his view, the trial evidence at most merely showed that "Bell was just buying drugs from Burno," and that there was "no evidence" at trial that "Burno and Bell had an agreement to 'further distribute the drugs.'"  The evidence was therefore

2

insufficient, Burno argues, because it is well settled that "a conviction for conspiracy cannot be based solely on the purchase of an unlawful substance, even though such a transaction necessarily involves an agreement between at least two parties, the buyer and the seller." *United States v. Lapier*, 796 F.3d 1090, 1095 (9th Cir. 2015) (citation omitted). We conclude that the evidence went beyond a mere buyer-seller relationship and that a rational jury could find the elements of the charged conspiracy beyond a reasonable doubt.

The trial evidence showed that, on October 31, 2019, law enforcement intercepted a package addressed to "Todd Brown" at the residence address of Burno in Anchorage, Alaska, and the package was ultimately found to contain approximately 5.7 pounds of methamphetamine. Law enforcement subsequently conducted a controlled delivery of that package on November 6, 2019. Burno, who was in California at the time, was tracking the package, and he asked Bell, who was in Alaska, to go to Burno's home and to get the package, which both men knew contained drugs. Bell went over to Burno's house before the delivery occurred and he signed for the package when it arrived, using the false name of "Tim Brown." Bell testified as to his understanding, from his communications with Burno, as to what he was supposed to do with the package after retrieving it. Specifically, Bell was first to take a pound of methamphetamine out of the package for himself, thereby covering a previously arranged purchase for which Bell had

3

already paid Burno $5,500. After doing so, Bell understood that Burno "wanted [him] to sit on it and just keep it secure until either he got back to town or sent instructions."

Based on this evidence, a rational jury could readily find, beyond a reasonable doubt, the following points. First, Bell and Burno agreed that Bell would intercept and possess the drug-filled package with the intent to deliver it to Burno. Second, that both Bell and Burno knew, before Bell went to intercept the package, that it contained a large quantity of methamphetamine. Third, given the fact that Burno told Bell to take from the package a pound that Bell had previously arranged to buy and then to hold the remainder of the package for Burno, Bell knew and agreed with Burno that, after Bell's safekeeping of the package was completed, Burno would then distribute the remaining drugs to other persons. Based on these points, a rational jury could find that, as to the *remaining* drugs in the package, (1) Bell and Burno agreed that the drugs would be possessed with intent to distribute—first by Bell, who would distribute them to Burno, and then by Burno, who would distribute them to others; and (2) Bell and Burno, by agreeing that Bell would intercept and keep the package safe for later delivery to Burno for his further distribution, had the intent to effect the object of this specific conspiracy. *See Collazo*, 984 F.3d at 1319 (stating that the requisite intent is shown if the defendant knows the scope of the relevant conspiracy). Finally, as to

4

the remaining drugs in the package, Bell and Burno manifestly did *not* have a buyer-seller relationship with one another. On this basis, the evidence was sufficient to support Burno's conviction for conspiracy to possess methamphetamine with intent to distribute.

2. Burno contends that his conviction should be reversed because the district court's jury instructions did not specifically enumerate the various factors that our caselaw has suggested may be relevant in "[d]istinguishing between a conspiracy and a buyer-seller relationship." *United States v. Moe*, 781 F.3d 1120, 1125 (9th Cir. 2015) (citation omitted); *see also id*. at 1125–26 (listing several such factors). However, denial of a requested instruction is not reversible error if the instructions that were given, "in their entirety, adequately cover that defense theory." *Id*. at 1127 (citation omitted). Here, the final jury instructions stated that "a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists," and that "[a] conspiracy cannot be found based solely on the sale of drugs from one party to another." In response to a jury question concerning whether a conviction required a finding that Burno conspired specifically with Bell (as opposed to others), the district court further instructed the jury: "No. However, conspiracy cannot be found based solely on the sale of drugs from one party to another and requires proof of an agreement to commit a crime beyond that of mere sale." Considered as

5

a whole, these instructions adequately conveyed "the distinction between a buyer-seller relationship and a co-conspiracy relationship." *Id.* at 1128. On this record, there was no "substantial risk" that, "in the absence of a more explicit instruction detailing the distinction," the jury would "mistak[e] a sale as a basis on which to find a conspiracy between a buyer and seller." *Id*. at 1128 n.11.

3. Burno argues that reversal is warranted on the ground that the prosecutor's closing argument improperly vouched for Bell's credibility. Specifically, Burno points to the following statements: (1) "The United States has enough trouble prosecuting guilty people. We don't need to spend government resources to prosecute innocent people"; (2) "I submit to you that [Bell] came across as extremely credible today"; and (3) several comments to the effect that Bell would not get any benefit from his plea agreement unless he was "honest" and "telling the truth." On appeal, the Government does not attempt to defend the first comment. But even assuming *arguendo* that the remaining comments also constituted improper vouching, we conclude that reversal is not warranted.

The jurors were instructed that it was their task to decide what witness testimony to believe and what testimony not to believe, and that the arguments of the lawyers were not evidence. With respect to Bell, the jurors were specifically instructed that it was up to them to decide "whether or not to believe this witness and how much weight to give to his testimony"; that they should examine his

6

testimony "with greater caution than that of other witnesses," in light of his "cooperation agreement with the government"; and that the jurors should "consider the extent to which, or whether[,] his testimony may have been influenced by the cooperation agreement." Bell's credibility was vigorously challenged at trial, and the jury was given ample information upon which to make its own assessment of his credibility. In particular, in cross-examination, Burno's defense counsel elicited Bell's admission that Bell faced a mandatory minimum sentence that would only go away if the *Government* concluded that his testimony was sufficiently satisfactory. Whether the Government was satisfied with Bell's testimony was thus presented by Burno as a point *against* Bell's credibility, which places the prosecutor's subsequent comments in a more ambiguous light. Considering the trial record as a whole, we conclude that any error in the prosecutor's comments was harmless.

4. Reviewing for plain error, we conclude that the district court's error in describing the object of the conspiracy in the instructions does not warrant reversal.

The district court instructed the jury that Burno had been "charged in count one of the indictment with conspiring to distribute or possess with intent to distribute or manufacture" methamphetamine. In fact, the only object of the conspiracy as charged in the indictment was "to knowingly and intentionally

7

possess with the intent to distribute" methamphetamine.  Even granting that the instruction was erroneous and that the error was plain, Burno has failed to carry his burden to show that there is "a reasonable probability that, but for the error, the outcome of the proceeding would have been different."  *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021) (citations omitted).  Given the factual evidence presented at trial, there is no likelihood that the jury convicted Burno on a theory that he conspired to *distribute* methamphetamine *without* also finding that he conspired to *possess with the intent to distribute* methamphetamine.  Put another way, Burno points to no evidence that would establish a likelihood, on this record, that the jury found that Burno somehow managed to conspire to distribute methamphetamine without agreeing that someone would possess methamphetamine with the intent to distribute it.  Moreover, the instructions' actual description of the elements of the conspiracy charge correctly stated that the required "agreement" would exist if "there was an agreement between [Burno] and one or more persons to commit *the crime of possession with intent to distribute* controlled substances" (emphasis added).  There is no reasonable probability that the asserted error affected the verdict, and reversal for plain error is unwarranted.

**AFFIRMED.**

8

*United States v. Burno*, No. 21-30237

IKUTA, Circuit Judge, dissenting in part:

The majority would hold Peter Burno guilty of conspiracy to possess a controlled substance with intent to distribute even though there is not a shred of evidence that Burno ever entered into an agreement with Billy Bell to do so. Therefore, I dissent.

Because Burno challenges the sufficiency of the evidence, we must view the facts in the light most favorable to the government. *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (citation omitted). Bell testified that he declined to do "one last deal" with Burno, but paid Burno $5,500 for a pound of methamphetamine. Burno and Bell agreed that Bell would retrieve a package from Burno's house in Alaska, remove his portion of the methamphetamine from the package, and hold the rest of the methamphetamine for Burno until Burno returned from California or sent further instructions. The government conducted a controlled delivery of the package to Burno's house, replacing most of the methamphetamine with salt and planting a GPS tracking device in the package. Bell signed for the package and took it to another residence. Once Bell opened the package, law enforcement went into the residence and arrested Bell. After Bell was arrested, law enforcement had Bell make two phone calls to Burno, which they recorded. During the first call, Bell asked, "What do you want me to do with this

damn box, just hold on to it and sit on it until you get here?" Burno responded, "You think you can do that?" Law enforcement then arrested Burno upon his return from California.

The government charged that Bell and Burno "knowingly and intentionally . . . conspired, confederated and agreed together and with each other . . . to knowingly and intentionally possess with the intent to distribute a controlled substance, to wit: 500 grams or more of a mixture or substance containing methamphetamine" in violation of 21 U.S.C. §§ 841(a), (b)(1)(A), and 846. For conspiracy to violate § 841(a), there must be an agreement to knowingly "possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a); *see also United States v. Moe*, 781 F.3d 1120, 1124 (9th Cir. 2015).

On appeal, the government argues that Burno had an agreement with Bell to possess the methamphetamine with intent to distribute because "Burno and Bell relied on the package being delivered safely, without detection, so that they could each secure their share of the drugs to resell." To support this claim, the government points to evidence that there was a large quantity of methamphetamine; that there was a high level of trust between Burno and Bell because Bell paid Burno $5,500 in advance and because "Burno asked Bell to

2

retrieve and hold a package that contained more than eight pounds of methamphetamine;" and that "Bell and Burno were friends who ha[d] known each other for more than 20 years."

This evidence fails to add up to a conspiracy to possess methamphetamine with an intent to distribute. At most, the evidence shows a buyer-seller relationship, which is insufficient to show a conspiracy. To the contrary, "[a] relationship of mere seller and buyer, with the seller having no stake in what the buyer does with the goods, shows the absence of a conspiracy, because it is missing the element of an agreement for redistribution." *United States v. Loveland*, 825 F.3d 555, 562 (9th Cir. 2016); *United States v. Mendoza*, 25 F.4th 730, 736 (9th Cir. 2022) ("[T]he buyer-seller rule dictates that 'mere sales to [or purchases from] other individuals do not establish a conspiracy to distribute or possess with intent to distribute.'" (citation omitted)). Evidence that the buyer and seller know that the other is likely to distribute drugs does not amount to evidence of an agreement to possess with intent to distribute. *See United States v. Lennick*, 18 F.3d 814, 818–19 (9th Cir. 1994). For a "seller to be conspiring with [a] buyer to redistribute, there has to be an agreement" to distribute, "not just surmise or knowledge, between the seller and buyer" that the buyer will likely redistribute. *Loveland*, 825 F.3d at 561.

3

Taking the evidence in the light most favorable to the government, there is no evidence that Burno and Bell ever entered an agreement to possess the drugs with the intent to distribute or deliver the drugs to any third person. The evidence that Bell agreed to purchase $5,500 of methamphetamine merely shows a buyer-seller relationship, which is "the absence of a conspiracy." *Id.* at 562. There is also evidence raising the inference that both Burno and Bell intended to individually redistribute the drugs, but there is no evidence of an agreement to do so. The majority relies on the fact that the package "contained a large quantity of methamphetamine," **Maj. at 4,** but we have held that "large quantities" of a drug cannot "sustain a conspiracy conviction in the absence of evidence of involvement of [a seller] in his buyers' drug sales." *Id.* at 560. So despite the substantial evidence that Bell possessed the methamphetamine for purposes of sale, there was insufficient evidence for a jury to conclude that either Burno or Bell "tacitly or explicitly made the requisite agreement" to possess for the purpose of distribution. *See id.* at 557. In sum, there is no evidence that Burno and Bell agreed to possess the drugs with intent to distribute, and "[w]ithout an agreement, there is no conspiracy." *Id.* at 557.

To the extent the majority argues that Burno and Bell agreed that Bell would "distribute" to Burno by delivering the package to Burno upon his return from

4

California, **Maj. at 4,** this argument was not raised by the government either at trial or on appeal, and so is forfeited. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). Moreover, the evidence that Burno instructed Bell to "hold the rest for Burno until he returned or sent further instructions" includes no instruction to deliver or transfer the drugs, so it is unsurprising that the government did not rely on this evidence.

A mere buyer-seller relationship and knowledge that the parties will likely engage in distribution is not enough to constitute a conspiracy under our caselaw. Because there is no evidence of an agreement between Burno and Bell to possess with intent to distribute, I would reverse Burno's conspiracy conviction for insufficient evidence. Therefore, I dissent.