**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50235 |
| Plaintiff-Appellee, | D.C. No. 2:20-cr-00298-JAK-2 |
| v. | |
| CHANEL WILEY, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted February 6, 2024*
Pasadena, California

Before: OWENS, BUMATAY, and MENDOZA, Circuit Judges.

Chanel Wiley appeals from her conviction and sentence for conspiracy to

distribute methamphetamine in violation of 21 U.S.C. § 846. She argues that there

was insufficient evidence to support her conviction, and that she was convicted

"only by association" with her boyfriend, Scott Penner, who pled guilty to the

same charge. We have jurisdiction under 28 U.S.C. § 1291. As the parties are

---

&ast; This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

familiar with the facts, we do not recount them here. We affirm.[1]

Normally, sufficiency of the evidence claims are reviewed under the *Jackson v. Virginia*, 443 U.S. 307 (1979), standard: "[W]hether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "However, because . . . [Wiley] did not move for acquittal," we review for plain error. *United States v. Franklin*, 321 F.3d 1231, 1239 (9th Cir. 2003). Under either stringent standard, Wiley's claim fails. The evidence that she conspired to distribute methamphetamine was not insufficient.

The elements of a § 846 conspiracy are "(1) an agreement to accomplish an illegal objective, and (2) the intent to commit the underlying offense." *United States v. Moe*, 781 F.3d 1120, 1124 (9th Cir. 2015) (quoting *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001)). As a result, "[t]he government 'can prove the existence of a conspiracy through circumstantial evidence that defendants acted together in pursuit of a common illegal goal.'" *United States v. Navarrette-Aguilar*, 813 F.3d 785, 794 (9th Cir. 2015) (quoting *United States v. Bishop*, 1 F.3d 910, 911 (9th Cir. 1993)). For example, evidence of a "shared stake" in a drug operation may disprove a defendant's assertion that

---

[1] We address Wiley's argument that her due process rights were violated when her ankle monitor beeped during jury selection in a concurrently filed published opinion, in which we affirm.

2

she did not conspire to distribute, but merely purchased, drugs. *See, e.g.*, *United States v. Mendoza*, 25 F.4th 730, 736 (9th Cir. 2022) (quoting *Moe*, 781 F.3d at 1125).

The following evidence, viewed in the light most favorable to the government, indicates that Wiley and Penner had an agreement to distribute methamphetamine and intended to distribute methamphetamine. First, Penner packaged, weighed, and sold methamphetamine out of Wiley's apartment, which a rational juror could have concluded he would not have done "[a]bsent an agreement." *See United States v. Mesa-Farias*, 53 F.3d 258, 260 (9th Cir. 1995) ("Absent an agreement, [the defendant's co-conspirator] would not have allowed an outsider to drive a car loaded with cocaine and heroin or sleep in an apartment containing drug paraphernalia and substantial amounts of cash.").

Second, a rational juror could have determined that Wiley initiated the sale because she asked the buyer whether he "need[ed] crap," which means methamphetamine. Immediately afterward, Penner began weighing bags of methamphetamine and discussing the price with the buyer.

Third, Penner structured the drug sale to financially benefit Wiley—he gave the buyer a $50 discount on the price of the drugs in exchange for an equivalent reduction in Wiley's outstanding debt to the buyer. Thus, Wiley had a financial "stake" in the sale of methamphetamine. *Mendoza*, 25 F.4th at 736 (quoting *Moe*,

3

781 F.3d at 1125). Wiley asserts that she played no part in the conversation about reducing her debt. She argues she was not even in the room while Penner and the buyer discussed the price of the methamphetamine. But a rational juror could have found that she still heard their exchange because there were no doors in her apartment except for the bathroom door. Even if she had not heard the conversation, it would not have been irrational to view the fact that Penner structured the transaction to benefit her as evidence corroborating her role in the conspiracy.

Fourth, Wiley told the buyer that she had previously tested a batch of methamphetamine for fentanyl. She believed that the methamphetamine the buyer was purchasing was from that same batch and asked him to test it and let her know if it was positive for fentanyl. Viewing this evidence in the light most favorable to the government, a rational juror could have interpreted Wiley's statements to indicate that she and Penner had an ongoing agreement to test and sell methamphetamine, and that she intended this sale as part of this conspiracy.

Finally, when the buyer returned to Wiley's home to pay Penner for the methamphetamine, the buyer left the money with Wiley. Wiley implies that this conduct is not probative because the buyer did not tell Wiley the purpose of the payment. But this assertion flips the *Jackson* standard on its head because *Jackson* requires us to construe the evidence in the light most favorable to the government.

4

443 U.S. at 319. Under *Jackson*, a rational juror could have interpreted this interaction as further evidence of Wiley and Penner's ongoing agreement and intent to sell methamphetamine because Wiley accepted payment for methamphetamine on behalf of Penner.

Consequently, under either *Jackson* or plain-error review, the evidence that Wiley conspired with Penner to distribute methamphetamine was not insufficient.

**AFFIRMED.**